GERENA, APPELLANT, v. REGISTRAR OF HUMACAO, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing
to Record a Deed of Partition.

No. 338.—Decided January 24, 1918.

RECORD OF TITLE—REGISTRARS AND THEIR POWERS.—The authority conferred upon
registrars by article 18 of the Mortgage Law to determine the validity
of deeds and the capacity of the parties thereto, refers to instruments not
recorded in the registry. When the instrument has been recorded the reg-
istrar who recorded it, or his successors in office, can not decide that the
recorded instruments are void or ineffective, no matter what errors or de-
fects they may contain, until their invalidity is declared by the proper
authority and in due form. The foregoing doctrine does not prevent a
subsequent ruling as to the validity of an instrument whose admission to
record was denied if the registrar is convinced later of the injustice of
his refusal.

ID.—PARTITION.—Applying the foregoing doctrine to this case, it was held that
after the recording of a deed of partition of property in regard to certain
awards, its admission to record in the same registry can not be denied as
to the remaining awards for reasons which necessarily had to be considered
when making the first record.

The facts are stated in the opinion.

Mr. Francisco González Fagundo for the appellant.

The respondent appeared pro se.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Nicolás Cruz y Rosas, as partitioner named by Alejo
Cruz Sánchez in his will; Galo Cruz Sánchez, in his own
right as legatee and as testamentary tutor of Angela and
Juan de los Santos Cruz, and Secundino Cruz Rosado, in his
own right, met and partitioned the estate left by the said
Alejo Cruz Sánchez at his death. The tutor had been author-
ized by the court to join in the partition and when this was
made it was submitted to and approved by the court.

The documents were presented in the Registry of Prop-
erty of Humacao by Galo Cruz Sánchez for the purpose of
recording in his name the property awarded to him, and the
registrar recorded the same under the following decision:

"After considering other documents this document, in so far as
it relates to the allotments made to Galo Cruz y Sánchez, the only

allotments asked to be recorded, is recorded in Vols. 23 and 34 of Yabucoa, pp. 194 and 164, properties Nos. 1106 and 1472, entries 2 and 1 respectively.''

The same document, with the foregoing decision endorsed thereon, was again presented in the same registry for the purpose of recording certain allotments made to the adult heir Secundino Cruz Rosado and to the minor heirs Angela and Juan de los Santos Cruz, but the registrar refused to admit the same to record for the reasons stated in the following decision:

''This document is denied admission to record as to the 37 acres, the remainder of the property described under letter *b*, and as to the property described under letter *d*, which were allotted in common to the heirs Secundino Cruz Rosado and Angela and Juan de los Santos Cruz Burgos, the only properties asked to be recorded, because of the following defects: (1) Because on March 21, 1917, Nicolás Cruz Rosa, Galo Cruz Sánchez and Secundino Cruz Rosado privately made the partition and distribution and their signatures have not been duly authenticated, nor have they ratified the said partition in a public instrument; (2) because inasmuch as Galo Cruz participated in the partition in his own right as legatee and as tutor of the minors Angela and Juan de los Santos Cruz, he being also a creditor of the estate, he has interests adverse to those of the said minors whom he represents; (3) because there being minors interested in the partition, the property should have been appraised by disinterested experts; (4) because the property of 10 acres awarded to the legatee Galo Cruz has been segregated from another property of 47 acres described in the partition under letter B, and according to the will the properties devised form part of a property of 160 acres; but while the partition recites that said property B together with properties C, D and E make up the devised properties, the fact is that it appears from the same document that they contain 195 acres. A cautionary notice is entered, etc.''

From that decision of August 10 the present administrative appeal was taken, it being alleged, among other reasons, that the registrar could not refuse to admit the instrument to record because it had already been recorded in the registry.

We have considered this question carefully and in our

opinion the allegation of the appellant is · well founded. As we shall see at once, in construing article 18 of the Mortgage Law, which is the statute now in force in Porto Rico, it has been decided repeatedly by the General Directorate of Registries of Spain that a registrar should not pass upon instruments already recorded in the same registry or in the old records.

On January 16, 1882, the said Directorate dwelt upon the following doctrine:

"It is considered that the power granted to registrars of property by article 18 of the Mortgage Law to inquire into the legality of deeds and the capacity of the parties thereto refers only and exclusively to unrecorded instruments or instruments presented for the first time in the registries for admission to record, as has been held repeatedly by this Directorate in its decisions cited.

"It is considered that if registrars were authorized to review recorded instruments this would amount to a prejudgment of the validity of the records already made, which is the exclusive province of the courts in the proper action."

On January 21, 1897, the same doctrine was applied, as follows:

"It is considered that as the part of the said document which stipulated the making of the contract of purchase and sale referred to by the appellant is already recorded literally, there is no way to regenerate the record already made, nor, therefore, has the registrar competency or authority again to inquire into the validity or nullity of the said contract.

"It is considered that according to the doctrine established by this Directorate in various decisions, recorded acts or contracts produce the effects prescribed by law and cannot be adjudged ineffective or void by a successor of the registrar who recorded them, no matter what defects they may contain, until their invalidity is declared by the proper authority in the proper form."

And on October 17, 1898, the Directorate ratified the doctrine as follows:

"Whereas the registrar has refused to record the deed of gift executed by Josefa Antonia Inocencia de Zayo, widow of Juan Pedro

de Zayo, of the undivided half of the said houses and appurtenances of Laurizteo de Zayo to her son Mateo de Zayo, because the testatory power which the said spouses mutually granted to each other in the said marriage settlement was not executed in accordance with the formalities prescribed by Law VIII, Title XIII, Book X, of the *Novísima Recopilación;*

"It is considered that according to the doctrine of the said articles of the Mortgage Law, repeatedly laid down by this Directorate in its different decisions already cited, registrars of property and their superior administrative officers are not authorized to pass upon the validity of recorded titles, which, until declared void by the courts, should be held and reputed as valid for the purpose of subsequently recording the acts or contracts executed by persons shown by the records of the registry to have the right to execute them."

We are of the opinion that the foregoing doctrine is applicable to this case, for while it is true that the partition was presented for the first time in the registry for the purpose of recording certain allotments, it is also true that in recording these the registrar tacitly recognized the validity of the whole of the partition without the defects assigned later in his decision of refusal to record.

The fact that the registrar who recorded the document was not the same person who denied the record is immaterial, in view of the fact that the registry is the same. It is the legal status created in the registry that is to be considered and not the personality of the different officials holding the office.

For the purpose of determining the limits of the doctrine upon which we base our decision in this case, we consider it well to cite with approval the opinion of Galindo on this point. After stating that the registrar should not inquire into the instruments already recorded in the same registry, he says:

"He can and should pass upon instruments which previously have been passed upon and recorded or rejected in other registries and presented in his registry to be recorded, because each registrar is responsible for his own acts.

"And can the registrar reconsider documents which he himself

has already held to be unrecordable if he find that his previous decision was erroneous? Undoubtedly he can. The registrar always acts under his own responsibility and there is no provision of the Mortgage Law which prevents him from acknowledging his error and modifying his decision without the necessity of an administrative appeal from his decision.

"If after an instrument is recorded and before it is returned the registrar understands that it should not have been recorded, can he cancel the record by virtue of his authority to pass upon the validity of the instrument?

"In its decision of June 8, 1896, the Directorate held that it could not decide whether or not he had such authority, this being a question for the courts to decide.

"We are of the opinion that after the record has been signed and the decision endorsed on the instrument he cannot reverse himself." II Galindo, Mortgage Law, 18.

Therefore, for the foregoing reason the decision appealed from should be reversed and the record ordered.

*Reversed and record ordered.*

Chief Justice Hernández and Justices Wolf and Hutchison concurred.

Mr. Justice Aldrey took no part in the decision of this case.